IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**ADAM LEE KERN,**

    **Plaintiff,**

v.   **CIVIL ACTION NO.: 3:21-CV-34**
    **(JUDGE GROH)**

**KILOLO KIJAKAZI,**[1]
**Acting Commissioner of Social Security,**

    **Defendant.**

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

    This case arises from the denial of Plaintiff Adam Lee Kern's ("Plaintiff") application for a period of disability and supplemental security income benefits ("SSI"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act"). Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of Defendant Andrew Saul ("Commissioner"), Commissioner of Social Security. Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for SSI contains no legal error and is supported by substantial evidence, the undersigned reports and recommends that Plaintiff's Statement of Errors [ECF No. 16] by which he requests that the ALJ's decision be set aside, be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 21] be **GRANTED**.

---

[1] Kilolo Kijakazi may be automatically substituted in place of former commissioner Andrew M. Saul pursuant to Fed. R. Civ. P. 25(d).

1

## II.    PROCEDURAL HISTORY

On January 21, 2019, Plaintiff filed his application under the Act for SSI, alleging disability that began on October 14, 2015. (R. 15). This claim was initially denied on March 12, 2019 (R. 111) and denied again upon reconsideration on August 28, 2019. (R. 129). On October 9, 2019, Plaintiff filed a written request for a hearing (R. 132), which was held before United States Administrative Law Judge ("ALJ") Karen B. Kostol on August 10, 2020, in Morgantown, West Virginia. (R. 35). Plaintiff, represented by counsel Sharon N. Bogarad, appeared via teleconference and testified. Gerald Wells, an impartial vocational expert ("VE"), also testified at the hearing. Id. On September 25, 2020, the ALJ issued an unfavorable decision to Plaintiff, finding that he was not disabled within the meaning of the Social Security Act. (R. 15).

Plaintiff filed a request for review of hearing decision dated November 9, 2020. (R. 176). Subsequently, the Appeals Council issued a Notice denying Plaintiff's request for review. (R. 1). Plaintiff filed his Complaint with this Court on March 4, 2021. [ECF No. 1]. The Commissioner filed the Answer and the Administrative Record of the proceedings on July 19, 2021. [ECF Nos. 11, 12]. Plaintiff filed his Statement of Errors on September 3, 2021. [ECF No. 16]. The Commissioner filed a Motion for Summary Judgment and Memorandum in Support, thereof, on October 12, 2021. [ECF Nos. 21, 22]. After the matter was fully briefed, the undersigned conducted a hearing on March 30, 2022 to receive argument from counsel.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

### III. BACKGROUND

#### A. Personal History

Plaintiff was born on October 12, 1979 and was thirty-nine (39) years old at the time he made his application for SSI. (R. 43). He is approximately 5'8" and weighs 140 to 150 pounds. Id. He completed high school and never obtained further education. (R. 44). Plaintiff was homeschooled during much of his high school education because he sustained a brain injury from a wreck. Id. Plaintiff is divorced and lives alone. (R. 43-44). Plaintiff has worked a series of minimum wage jobs, often part-time, in fast food and as a delivery driver. (R. 47-49). At the time of the hearing before the ALJ, Plaintiff had income from part-time work for his mother; by this arrangement, he maintains a home that his mother owns and in which he lives. (R. 45-46). Plaintiff alleges that he is limited in his ability to work due to migraines, kidney stones, certain mental disorders, and neuropathy in the left leg, all of which leads to chronic absenteeism at work. (R. 42).

#### B. Medical History

In accordance with the Court's Order Directing Filing of Briefs [ECF No. 13] and the Court's Order Directing Plaintiff to File a Proposed Stipulation of Facts [ECF No. 17], the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. Accordingly, the undersigned relies upon those stipulated facts throughout this report and recommendation. See Pl's Prop. Stip. Facts, ECF No. 18; Def.'s Brief Supp. Mot. Summ. J., ECF No. 22, at 2-6.

### IV. THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Act, a claimant must meet the following criteria:

> [The] individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

> national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). The Social Security Administration uses the following five-step sequential evaluation process to determine if a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4); 416.920. If the claimant is determined to be disabled or not disabled at one of the five steps, the process does not proceed to the next step. Id.

## V. ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that, since January 21, 2019 (Plaintiff's application date), Plaintiff had not engaged in any substantial gainful activity for a continuous twelve-month period. (R. 17). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: chronic migraine headaches, peripheral

4

neuropathy, status post right lower extremity injury and reconstruction surgery, drop foot, bipolar disorder, depressive disorder, anxiety disorder, borderline personality disorder, chronic kidney stones, irritable bowel syndrome ("IBS"), chronic pain, and right peroneal neuralgia. Id. At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments. Id. At step four, the ALJ determined that Plaintiff's RFC as follows:

> "to perform sedentary work as defined in 20 CFR 416.967(a) except can never climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs as well as occasionally balance, stoop crouch, kneel or crawl. He must avoid concentrated exposure to extreme cold, extreme heat, wetness or humidity, excessive vibration, irritants such as fumes, odors, dust and gases and must avoid all exposure to any hazards, such as dangerous moving machinery and unprotected heights. He is capable of simple routine and repetitive tasks in a low stress job defined as having only occasional decision making required, as well as occasional changes in the work setting and no strict production quotas. He is capable of occasional interaction with the general public, co-workers and supervisors. He also is capable of occasional use of computer screens."

(R. 20). Then, the ALJ determined that Plaintiff has no past relevant work. (R. 25). At step five, the ALJ concluded that Plaintiff is capable of performing jobs in the national economy that exist in significant numbers. Id. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. (R. 26).

## VI. DISCUSSION

### A. Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).

**B. Contention of the Parties**

Plaintiff contends that the ALJ's decision is unsupported by substantial evidence. [ECF No. 16]. Plaintiff asserts that the ALJ erred in finding that: (1) Plaintiff does not have mental impairments and a combination of physical impairments which preclude substantial gainful employment; (2) Plaintiff's renal impairment and function (i.e. chronic kidney stones) do not amount to a chronic renal disease under the Listings; (3) Plaintiff's irritable bowel syndrome ("IBS") is not an impairment meeting or medically equaling the severity of an impairment in the Listings; (4) Plaintiff's history of chronic migraine headaches would not impede substantial gainful employment; (5) the intensity and persistence of Plaintiff's pain and symptoms do not impede substantial gainful employment; and (6) Plaintiff's mental impairments and combination of physical impairments nonetheless allow for substantial gainful employment at an unskilled

sedentary exertional level. More specifically, Plaintiff first argues that the ALJ did not properly account for the absenteeism resulting from his combination of impairments and how an employer would not tolerate such absenteeism. Plaintiff argues secondly that the ALJ improperly discounted his subjective complaints of pain.

Defendant argues that the deferential standard of review here allows the ALJ's decision to stand. Defendant specifies how the ALJ reviewed a number of listings and explained, in detail, how Plaintiff's conditions did not meet or equal the criteria in those listings. To this end, Defendant stresses how the ALJ found that Plaintiff had been treated for his maladies (e.g. kidney stones, renal issues, migraine headaches) and that such treatments resulted in improvements. Defendant also emphasizes how the ALJ restricted Plaintiff in the RFC analysis even more than state agency medical experts did, yet still found him to not be disabled. As for Plaintiff's subjective complaints, Defendant argues, the ALJ found that impairments indeed could cause Plaintiff's symptoms. Further, Defendant argues that the ALJ detailed a number of instances in the record showing that Plaintiff was treated for his impairments, resulting in improvement, and that the ALJ highlighted how Plaintiff did not always comply with recommended treatment/therapy for his impairments.

**C. Analysis of the Administrative Law Judge's Decision**

    **1.    Substantial evidence supports the ALJ's decision that absenteeism is not an impediment to employment for Plaintiff, such that the Listings are not met and the RFC analysis is proper.**

The ALJ analyzed the record in detail, highlighting inconsistencies between Plaintiff's complaints and the findings of medical professionals. The ALJ also emphasized how Plaintiff did not heed medical professionals' advice, undercutting Plaintiff's claims. In her decision, the ALJ carefully parsed the record to highlight how the medical evidence of record does not support

Plaintiff's claims about how his medical conditions result in an intolerable level of absenteeism. Thus, substantial evidence supports the ALJ's decision.

For context, in the hearing before the ALJ, Plaintiff explained his medical history and the existence of certain medical issues which he alleges result in chronic absenteeism from work. In particular, Plaintiff detailed his issues with chronic migraine headaches and chronic kidney stones. (R. 50-53). As for his migraines, Plaintiff stated that he has a varying number of migraines per month, approximately seven to fourteen. (R. 51). When Plaintiff has a severe migraine, he may be bedridden for two to three days. Id. With migraines, Plaintiff has increased sensitivity to light, sound, and smells, which causes him to vomit. Id. At the time of the hearing before the ALJ, Plaintiff estimated that he had visited the emergency room for migraines approximately eight to twelve times in the preceding year. (R. 52).

As for his chronic kidney stones and related IBS, Plaintiff explained that he had approximately 60 kidney stones at the time of the hearing before the ALJ. (R. 53). He has had two lithotripsies to break up kidney stones to allow them to be passed. Id. Additionally, Plaintiff testified as to his issues with drop foot and other pain (R. 54), and mental health (R. 55).

In addition to Plaintiff's testimony before the ALJ, the ALJ also took testimony from the VE to gauge whether there are jobs in the national economy which Plaintiff could perform. (R. 67-69). In so doing, the ALJ found that Plaintiff had no past relevant work. (R. 67). The ALJ then asked the VE to consider a hypothetical worker capable of performing light exertional work with the certain limitations detailed in the ALJ's findings, summarized above. With that hypothetical and its limitations, the VE concluded that there are jobs available in the national economy, giving as representative examples those of hand-presser in a laundry, housekeeper, and mail sorter (R.

68-69). Notably, although the ALJ asked the VE to consider a hypothetical claimant capable of performing light work, the ALJ ultimately restricted Plaintiff to an RFC of sedentary work.

### a. The ALJ's conclusions that Plaintiff's complaints do not meet any Listings are supported by substantial evidence.

First, as to the Listings, in considering all of Plaintiff's complaints, the ALJ stepped through various Listings in the regulations to determine if Plaintiff meets or exceeds the Listing criteria. For instance, the ALJ found Listing 11.02 (epilepsy) to be the closest available listing to address migraine headaches. But the ALJ explained that nothing in the record shows this listing to be medically equaled, and that Plaintiff otherwise is able to engage in life pursuits (e.g. watch television, perform housework/laundry and go shopping, prepare simple meals, and maintain a social life with a girlfriend). (R. 18).

The ALJ examined Listing 5.06 is as to inflammatory bowel disease and Listing 6.00 for renal impairments, and explained how nothing in the record shows Plaintiff to meet the specific requirements on those Listings. Lastly, the ALJ examined Listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) regarding mental impairments, and found that Plaintiff does not meet or medically exceed them. (R. 19). The ALJ noted that Plaintiff has certain mental limitations (e.g. needing to write down information and reminders because of poor memory, some difficulty being around people). And the ALJ evaluated Plaintiff in view of "Paragraph B" criteria (the Paragraph B of each Listing to determine how a mental disorder limits a claimant's functioning, per Listing 12.00.A.2.b) in so doing. But the ALJ took pains to explain that Plaintiff's mental limitations under "Paragraph B" criteria are not so pronounced as to be "marked" or "extreme," but rather are "moderate."

9

### b. The ALJ's RFC assessment is supported by substantial evidence.

The ALJ then moved on to the RFC assessment as to Plaintiff's several complaints, reviewing the complaints against the pertinent regulations.

For example, as to migraine headaches, the ALJ recognized that Plaintiff saw a neurologist for the condition on April 28, 2018 and for follow-up on January 17, 2019. (R. 22, 878-881). The ALJ also recognized that Plaintiff has presented to the emergency room for migraines, and has received numerous examinations and medications for the condition. (R. 22). Nonetheless, as the ALJ pointed out, medical providers have noted Plaintiff's unhealthy habits and at least one provider has advised Plaintiff to change such habits to address the headaches. For example, a provider at the Neurology Clinic at the WVU Eye Institute noted: "Discussed decreasing caffeine intake, trying to increase sleep and sleep hygiene, increasing hydration, avoiding food triggers. Patient really needs to work on life style [sic] changes to help improve headaches, <u>discussed this at length</u>" (R. 692) (emphasis added). This provider also suggested a simple administration of melatonin nightly to aid with insomnia, among other measures. <u>Id</u>. Yet, nothing in the record shows that Plaintiff meaningfully heeded this advice.

Plus, as to Plaintiff's migraines, the ALJ was careful to note that, contrary to Plaintiff's testimony, the medical evidence shows some improvement with his migraines as recently as June 11, 2020, and that his medications were working well. (R. 1529). At that same time, it appears that the provider reiterated the need for Plaintiff to change certain lifestyle habits to manage his migraines. (R. 1529-1532). Further, the ALJ noted that testing and lab work did not reveal acute distress nor any remarkable findings. (R. 22). For example, when Plaintiff presented at the emergency room on February 12, 2020, after lab work and a CT scan, the provider could discern no obvious reason for his symptoms. (R. 1914-1917, 1929).

10

As to Plaintiff's kidney stones, the ALJ acknowledged portions of the record demonstrating that Plaintiff sought medical treatment for the condition in February 2019. (R. 22). Yet, the ALJ noted that Plaintiff did not obtain recommended follow-up (R. 22) and that, in any event, later shockwave lithotripsy and other care resulted in improvement, such that Plaintiff had no obstruction and examination yielded nothing remarkable. (R. 22, 1598-1601, 1953). Moreover, the ALJ recognized Plaintiff's IBS associated with kidney stones, and specifically accounted for IBS in determining Plaintiff's RFC. (R. 23).

As to Plaintiff's drop foot and issues with pain, the ALJ acknowledged a number of such diagnoses. (R. 22). Further, the ALJ pointed out that Plaintiff had noticeable pain relief when taking certain medications (R. 22, 926-927), but that he did not obtain corresponding physical therapy and was discharged from the same. (R. 22, 1484). As to Plaintiff's mental impairments, the ALJ likewise acknowledged a history of bipolar disorder, agoraphobia, and depression. (R. 23, 742, 775, 978, 1637, 1662, 1725). However, the ALJ further noted that Plaintiff's condition in this regard never has resulted in any inpatient or outpatient hospitalization (R. 23-24), and that his treatment for mental impairments has been limited and resulted in stability. (R. 24). Specifically, the ALJ noted that Plaintiff was prescribed certain medications, and when adjusted, the medications helped to stabilize his mood and control depression and anxiety. (R. 23).

In evaluating all of Plaintiff's complaints of impairment against the medical record, the ALJ concluded that the impairments may cause some mild limitations, but not so much as to preclude work. In fact, the ALJ reviewed and wrote extensively about medical opinions and prior administrative medical findings to conclude that Plaintiff actually is more limited than suggested by those prior opinions. (R. 24-25). In so doing, the ALJ assigned the more limited "sedentary" RFC to Plaintiff, rather than a "light exertional" RFC. This underscores the care with which the

11

ALJ reviewed the record and crafted an appropriate RFC, and demonstrates that substantial evidence supports the ALJ's decision.

      **c.    Plaintiff's argument about his chronic absenteeism requiring a finding of disability is not supported by the record.**

Plaintiff maintains that the ALJ did not properly account for how absenteeism would result from Plaintiff's conditions and combination of conditions, especially his migraines and kidney stones. Pl's Stmt. Errors, ECF No. 16 at 14-15. As noted above, Plaintiff testified that he is unable to function during bouts with migraines and otherwise, and that those occur several days per month. And Plaintiff emphasizes the VE's testimony that a hypothetical worker who is off-task or misses 20 percent or more of the work week would be unemployable. (R. 71-72). Plaintiff argues that he is such an individual who would be chronically absent. However, the ALJ rightly noted that Plaintiff does not appear to be precluded from working as often as Plaintiff stated in the hearing before the ALJ.

"The ALJ . . . has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." Koonce v. Apfel, 166 F.3d 1209, at *5 (4th Cir. 1999). Thus, the hypothetical to the ALJ about 20 percent absenteeism is not dispositive of the issue. Plaintiff testified that he presented at the emergency room for migraines eight to 12 times in the year preceding the hearing before the ALJ. (R. 51). But the record simply does not bear out that frequency. Plus, Plaintiff's migraines improved with treatment, negating concerns about absenteeism. (R. 25, 1529). As for other maladies, such as kidney stones, they have been managed with medication and lithotripsy (R. 1587-1588), and nothing in the record shows Plaintiff to have a more serious condition such as renal failure or kidney disease. As for treatment needed to manage musculoskeletal issues, Plaintiff did not follow through with recommended care (R. 1484). As for mental and emotional conditions,

the record does not show any recommendation for heightened in-patient or outpatient treatment; the record does show that the conservative treatment regimens were all that Plaintiff requires.

Ultimately, the record belies Plaintiff's arguments that he would be a chronically absent employee. Thus, the ALJ's findings and conclusions in this regard are not clearly erroneous and should be upheld.

## 2. The ALJ properly evaluated Plaintiff's subjective complaints of pain.

Plaintiff argues that his subjective complaints of pain govern the analysis here such that the ALJ's decision is unsupported by substantial evidence. However, the record shows that the ALJ properly evaluated Plaintiff's subjective complaints of pain against the objective record to reach her conclusions.

The undersigned does not disagree with Plaintiff insofar as ". . . where the claimant proves the existence of a medical condition that could cause pain, the claimant's subjective complaints must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). However, this does not dictate that, in this matter, Plaintiff's subjective complaints of pain govern the analysis. The analysis is more complex. The Secretary's regulations detail the process:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work (or, if you are a child, your functioning). However, statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other

13

> symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you. We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work…".

20 C.F.R. § 416.929(a). In short, the process is that (a) the ALJ determines whether the claimant has impairments which reasonably could be expected to produce the pain about which the claimant complains, and if so, then (b) the ALJ examines the intensity and persistence of the claimant's symptoms to ascertain how much a claimant may be limited in the ability to work. 20 C.F.R. § 416.929(b)-(c); see also Craig v. Chater, 76 F.3d 585, 594-595 (4th Cir. 1996).

In this matter, the ALJ found, first, that Plaintiff does have such impairments as could be expected to produce the pain which Plaintiff described himself as having. However, in the second step, the ALJ detailed how the objective medical evidence of record does not square with Plaintiff's subjective complaints of pain. (R. 21). Instructive caselaw states that an examination of objective evidence against subjective complaints, as the ALJ did here, is required by the regulations. Craig, 76 F.3d at 594-595. More to the point, and as detailed above regarding the absenteeism issue, the ALJ detailed how the record shows Plaintiff's mental issues to require commonplace, lower-intensity treatment. Plaintiff's migraines and kidney stones responded to certain treatments, the ALJ noted. And finally, Plaintiff did not follow through with recommended physical therapy to manage musculoskeletal issues, and nothing of record shows him to have adopted lifestyle changes to diminish his migraines.

Accordingly, substantial evidence supports the ALJ's conclusions about Plaintiff's subjective complaints of pain and how to factor them into a determination about Plaintiff's alleged disability.

### 3. The ALJ properly handled the statement given by a family nurse practitioner who treated Plaintiff.

The final issue before the Court is whether the ALJ properly accounted for a medical source statement from a family nurse practitioner, Joy Irvin, who treated Plaintiff. (R. 384, 1050). Here, Ms. Irvin stated that "I do believe that [Plaintiff] has trouble holding down a job due to psychiatric diagnoses." (R. 384, 1050). Plaintiff argues that this is substantial evidence which the ALJ should have considered to evaluate the extent of Plaintiff's mental impairments.

However, the Commissioner's regulations are clear that such conclusory statements that a claimant is disabled need not be analyzed in an ALJ's decision. Rather, such determinations are reserved for the agency itself, not a claimant's treatment providers. 20 C.F.R. §§ 416.920b(c), (c)(3)(i). Certainly, the regulations provide an extensive process for how an ALJ is to evaluate medical opinions. 20 C.F.R. § 416.920c. However, this statement by Ms. Irwin is, by definition, not a medical opinion. Thus, there is no requirement under the regulations for the ALJ to provide any analysis of it. The ALJ acted properly with regard to this issue.

### VII. RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim for SSI does not contain legal error and is supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [ECF No. 14] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 17] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party shall have fourteen (14) days (filing of objections) from the date of the filing of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 24th day of May, 2022.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE